**In re WINTHROP OLD FARM NURSERIES, INC., Debtor.**

**Bankruptcy No. 93–10973–WCH.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 23, 1993.

Richard M. Pierce, Roberts, Carroll, Feldstein & Pierce, Inc., Providence, RI, for New Bedford Inst. for Sav.

Ann Brennan and Stephen E. Shamban, Stephen E. Shamban Law Offices, Inc., Braintree, MA, for debtor.

## CORRECTED DECISION RE VALUATION OF PROPERTY

WILLIAM C. HILLMAN, Bankruptcy Judge.

This matter is before the court on a narrow issue of valuation of property for purposes of a plan of reorganization. The parties have stipulated that the fair market value of the property is $400,000 and the liquidation value 25% less, or $300,000, and that the debtor proposes to retain the property.

If the former value is used for plan purposes, the second mortgage claim of New Bedford Institution for Savings ("NBIS") is partially secured. If the Court determines that liquidation value is appropriate, the NBIS claim is completely unsecured.

The statute provides that

"An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the

extent of the value of such creditor's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."

11 U.S.C. § 506(a).

Congress has purposefully left the meaning of "value" to the courts:

"'Value' does not necessarily contemplate forced sale or liquidation value ... nor does it always imply full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case."

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 356 (1977). *See also* Sen.Rep. No. 95–989, 95th Cong., 2nd Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6312.

The cases are numerous and conflicting.

Rather than reinventing the wheel, it is adequate to quote from Judge Dreher's recent summary of the present state of the law in a Chapter 13 case involving an automobile. I consider the cases to present the same issues. She said:

"One line of cases ... determines that the critical language of section 506(a) is the language for the first sentence which provides that the creditor's claim is secured to the extent of the value of *such creditor's interest* in the estate's interest in such property. According to such language, the property interest being valued is the creditor's lien interest in the collateral and not the debtor's ownership interest. These courts then reason that a lien is simply a right to take possession of the collateral and sell it in satisfaction of an obligation. Therefore, the value of the lien is equal to the amount the creditor could receive upon sale of the collateral. Such reasoning generally results in two conclusions: First, the appropriate value of the lien interest should be based on the wholesale value of the collateral rather than its retail value, since the creditor is generally not considered a 'dealer' in the collateral and therefore could not sell it at retail; and second, costs of sale should be deducted from the value of the lien interest since such costs would have to be incurred by the creditor in taking possession of and selling the collateral.

"A second line of cases ... focuses instead on the language of the second sentence of section 506(a) which provides that the creditor's lien interest must be valued in light of the *purpose* of the valuation and *the proposed disposition or use* of the collateral. Since the value of the creditor's lien is to be determined in light of the debtor's intended use of the collateral and the purpose of the valuation, these court conclude that the value will be dictated by the facts of each particular case. Where the debtor proposes to retain and use the collateral, and the purpose of the valuation is to determine the amount that an undersecured creditor will be paid on its secured claim under the debtor's plan, the value of the creditor's lien is derived from the stream of payments that the lien secures, rather than the right to foreclose, since no liquidation of the collateral is contemplated. Accordingly, the courts focusing on the second sentence of section 506(a) generally reach conclusions directly contrary to the courts that focus on the first sentence, *i.e.:* The value of the lien should be based on the retail value of the collateral since such is the replacement value to the debtor; and the costs associated with sale of the collateral should not be deducted since no sale is contemplated."

*In re Green,* 151 B.R. 501, 503–04 (Bankr. D.Minn.1993) (citations omitted; emphasis in original).

In the context of the present case, "retail" becomes fair market value, and "wholesale" the agreed liquidation value.

I am persuaded that the better rule is to use fair market value in the context of a plan confirmation hearing where the property is to be retained. The standard might be otherwise under other circumstances, a situation which is contemplated by the language of the

statute. *See, e.g., In re Robbins,* 119 B.R. 1 (Bankr.D.Mass.1990). Accordingly, I hold that the appropriate value to be used here is $400,000.